IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BOEHME,<br><br>           Plaintiff,<br>  v.<br><br>CHOMNAN LOTH; CITY OF NEWARK POLICE DEPARTMENT; DOES ONE through TEN,<br><br>           Defendants.<br>                                       / | No. C 06-7419 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On February 8, 2008, defendants filed a motion for summary judgment. Plaintiff did not file an opposition to the motion. A hearing on was held on March 14, 2008 with both parties present. Plaintiff did not make any legal or factual arguments but only expressed his opinion that defendants had been untruthful. Having considered the papers submitted, the Court hereby GRANTS defendants' motion.

**BACKGROUND[1]**

At the time of the incident in question, plaintiff Timothy Boehme was employed as a programmer at Sanmina-SCI ("Sanmina") machining facility in Newark, California. Larsen Decl., Ex. B at 7-8. He had worked there for approximately 18 months. *Id*. at 8. In the approximately six months preceding the incident, plaintiff experienced "nothing but problems" with his coworker Thomas Symonds ("Symonds"). *Id*. at 24. These problems included plaintiff's sexual-harassment complaint against Symonds, Symonds' complaint against plaintiff for insubordination against a company policy – which plaintiff perceived to be in retaliation for the sexual-harassment complaint – and plaintiff's subsequent, second harassment complaint against Symonds.

---

[1] For the background section, the Court relied upon defendant's motion for summary judgment which describes these facts with support from a sworn declaration and exhibits. Plaintiff did not file an opposition to the motion for summary judgment and does not dispute the facts. Plaintiff's description of the events underlying the action from the joint case management conference statements appears to be consistent with defendant's version of the facts.

On or about June 22, 2005, Symonds overheard plaintiff saying to another coworker, "I own an M-16 with 300 rounds of ammunition and a list of names to go with it" ("Statement"). *Id.*, Ex. C at 48. According to Symonds, plaintiff made the Statement in a "boisterous" and "elevated" voice, thus enabling Symonds to hear it even though Symonds was sitting in his cubicle approximately fifteen to twenty feet away. *Id.* at 49, 51-53. Symonds stated that he felt "that there may have been some intimidating factors behind it that may have been intended for myself" and "there was a lot of weird behavior with [plaintiff], a lot of bizarre behavior" and felt that he needed to report the comment. *Id.* at 66-67. On or about June 24, 2005, Symonds reported the Statement to his supervisor, Jeff Snyder. Shortly thereafter, Ann Abina ("Abina"), Sanmina's human resources manager, called Symonds into her office, and he reported plaintiff's Statement to her.

On June 29, 2005, Abina called the Newark Police Department to report that she "had an employee who made an inappropriate statement in the workplace that [she] had confirmed, that [they] were going to sit down with him and put him on administrative leave," and that she "was concerned because of the statement." *Id.*, Ex. D at 60. She was asked the name of the employee and the content of the statement, which she provided. She was then told that the Department would run plaintiff's name through their system and call back "if something shows up." *Id.* According to Abina, the Department "called back in five minutes" and "they were there maybe five minutes after that." *Id.* at 64. Approximately five Newark police officers arrived, including defendant Officer Chomnan Loth ("Loth").

Abina brought the officers into the conference room with the plant manager, herself, the manufacturing manager, and their own security officer. They called plaintiff into the conference room. When plaintiff entered the conference room, an officer patted him down but did not handcuff or otherwise put his hands on him. Plaintiff told them that he made the Statement in a discussion about terrorism, and that the "list part of it was more or less just a joke at the end." *Id.*, Ex. B at 19-20. The Newark Police Sergeant present asked plaintiff about the M-16 he claimed to own. Plaintiff responded, "it's not a real M-16, but I do have one that's kind of similar," and indicated that he "registered it when he bought it" but he did not know if it was registered with the Department of Justice. *Id.* at 24. Plaintiff then told the sergeant about the "nothing but problems" he had experienced with Symonds over the

2

previous six months. *Id*. at 24-25. Plaintiff and the officer also "talked about being under stress with the sexual harassment," *id*. at 35, and plaintiff stated that "a few months ago he was really depressed and stressed out over work, but now he is fine." *Id.*, Ex. F at 3. Debbie Demetry, who worked in Human Resources and was present on the telephone, informed the officers that plaintiff had previously admitted to her that he heard "little people." *Id*., Ex. E at 44-45.

In a separate conversation, Symonds reported to one officer that plaintiff "commented about owning an M-16, 300 rounds of ammunition, and a list to go with it," and that "there was some negative history" between Symonds and plaintiff. *Id.*, Ex. C at 59-60. Don Green, the coworker to whom plaintiff made the Statement, confirmed the content of the Statement, but reported that he did not believe it was serious, and that plaintiff was talking about terrorism.

The officers ultimately informed plaintiff that he was a threat and that they would take him for seventy-two-hour psychological evaluation, go to his house, and confiscate his guns. The police report completed by Officer Loth states, "Based on Boehme past history of depression, his ability to obtain a firearm and statements made by Symonds, a 72 hours psychiatric evaluation (51510W.I) was placed on Boehme, for danger to other." *Id*., Ex. F at 2.

Plaintiff told Officer Loth that "if he did go to my house, he probably wouldn't be able to find that gun" because "it was pretty much hidden so [his] kids wouldn't play with it." *Id*. Ex. B at 47. Upon instruction from the officers, plaintiff called his wife and informed her where the weapons were hidden. An ambulance arrived, and the officers escorted plaintiff to it, possibly leading him by the shoulder, but applying no more force than that. Plaintiff was taken to a hospital for a mental examination, and remained there for approximately five or six hours. He was examined by a physician, who concluded that he could be discharged because he was not a threat to himself or others.

Three officers went to plaintiff's home where plaintiff's wife and daughter were present. Plaintiff's wife showed them where the firearms were hidden, and the officers confiscated them. The police report lists the weapons as a ".25 Cal semi-auto firearm serial #M193996" a "DPMS Mod A-15 .223 cal rifle serial #14653," and an "unknown make/model wood, bolt action rifle serial #27516." *Id.*, Ex. F at 2. The DPMS A-15 rifle was determined to be an assault weapon whose unauthorized possession was prohibited under California Penal Code Section 12280 (b), and a warrant was issued for

plaintiff's arrest on September 1, 2005. On April 13, 2007, plaintiff pleaded no contest to the illegal possession of the firearm, and was sentenced to one year of probation. Plaintiff's plea mooted his state court motion to suppress evidence. Plaintiff has not alleged or produced any evidence that he has challenged any aspect of his conviction or sentence in any manner except for the claims that are the subject of the present lawsuit.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

As an initial matter, the Court finds that because plaintiff has failed to present any evidence in opposition to defendants' motion for summary judgment, he has failed to demonstrate that there are any

4

genuine issues of material facts in dispute. *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007) (finding that a district court does not have a duty to search for evidence that would create a factual dispute, even when a party is a pro se litigant). Because defendants' version of the facts is undisputed and supported by evidence, the Court only addresses issues of law.

## I.      False imprisonment

Plaintiff's first cause of action for false imprisonment alleges that the defendant officers unlawfully detained him, and that the Department is vicariously liable for the officers' actions. Defendants contend that this claim has no merit as a matter of law because the officers had probable cause to detain plaintiff.

Under California Welfare and Institutions Code Section 5150, police officers and other designated professionals can detain a person "who is a danger to others, or to himself" as a "result of mental disorder." The statute authorizes a 72-hour hold of such a person at a county-designated facility for treatment and evaluation. *See* Cal. Welf. & Inst. Code § 5150. A detention pursuant to Section 5150 must meet Fourth Amendment standards and must therefore be supported by probable cause. *See Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991) (finding that seizure of the mentally ill is analogous to a criminal arrest and must therefore be supported by probable cause). To constitute probable cause, "a state of facts must be known to the peace officer (or other authorized person) that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself." *Heater v. Southwood Psychiatric Center*, 49 Cal. Rptr. 2d 880, 887 (Ct. App. 1996). "[T]he officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." *Id*. "Each case must be decided on the facts and circumstances presented to the detaining person at the time of the detention, and the detaining person is justified in taking into account the past conduct, character, and reputation of the detainee." *Id*. If an officer properly detains an individual pursuant to Section 5150, he is immune from liability for that detention. *See* Cal. Penal

Code § 847(b).[2]

Here, the officers had probable cause to detain plaintiff pursuant to Section 5150. Plaintiff's Statement, the information that plaintiff had firearms in his home, plaintiff's statement that his problems with Symonds had caused him stress, and his past statement that he "heard little people," would lead a reasonable person of ordinary care and prudence to believe or entertain a strong suspicion that plaintiff was mentally disordered and potentially dangerous.[3]  Thus, the officers were justified in detaining plaintiff and are therefore immune from liability for false imprisonment. Similarly, the Department cannot be held vicariously liable for plaintiff's alleged injuries. *See* Cal Gov. Code §§ 815.2, 820, 820.2. Accordingly, the Court GRANTS defendants' motion for summary judgment as to the first cause of action.

## II.   Unlawful search and seizure

Plaintiff's second cause of action alleges that defendants violated plaintiff's Fourth Amendment right to be free from unlawful search and seizure by detaining, arresting and charging him without adequate legal cause, and by searching his residence and seizing property without a warrant or legal cause. Defendants contend that plaintiff's second cause of action has no merit as a matter of law because the officers had probable cause to detain plaintiff, and the firearms were lawfully seized pursuant to California Welfare and Institutions Code Section 8102. The Court determined above that officers had probable cause to detain plaintiff. Thus, the only remaining issues are whether there was an illegal search and seizure of the firearms from plaintiff's home, and whether plaintiff's subsequent

---

[2] California Penal Code Section 847(b) states in relevant part:

> There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer or federal criminal investigator or law enforcement officer described in subdivision (a) or (d) of Section 830.8, acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances:
> (1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful.

Cal. Penal Code § 847.

[3] Although the officers were not qualified to evaluate plaintiff psychologically, their right to detain plaintiff based on probable cause until plaintiff could be properly evaluated is inherent in the Section 5150 process. *See Heater*, 49 Cal. Rptr. 2d at 887.

6

1 arrest and charge of illegal possession of a firearm were warranted.

2 California Welfare and Institutions Code Section 8102 provides:

> Whenever a person, who has been detained or apprehended for examination of his or her mental condition . . . is found to own, have in his or her possession or under his or her control, any firearm whatsoever, or any other deadly weapon, the firearm or other deadly weapon shall be confiscated by any law enforcement agency or peace officer, who shall retain custody of the firearm or other deadly weapon.

Cal. Welf. & Inst. Code § 8102. "By its terms Section 8102, subdivision (a), permits confiscation of weapons only of persons who have been apprehended or detained under Section 5150 or who have been evaluated in some fashion by a mental health professional." *City of San Diego v. Kevin B.*, 13 Cal. Rptr. 3d 450, 454 (Ct. App. 2004). The constitutionality of Section 8102 was upheld in *Rupf v. Yah*, 102 Cal. Rptr. 2d 157 (Ct. App. 2000).

Here, defendant was properly detained pursuant to Section 5150 and subsequently evaluated by a mental health professional. Thus, the search and seizure of the firearms from plaintiff's residence was warranted and did not violate plaintiff's Fourth Amendment rights. During the lawful search and seizure, officers uncovered a firearm determined to be an assault weapon whose unauthorized possession is prohibited under California Penal Code Section 12280(b), warranting plaintiff's subsequent arrest and charge. Accordingly, the Court GRANTS defendants' motion for summary judgment as to the second cause of action.

### III.  Violation of free speech rights

Plaintiff's third cause of action alleges that defendants violated plaintiff's First Amendment right to free speech by detaining, arresting, and charging him because of comments he had made concerning the issue of terrorism. Defendants argue that there is no evidence to support plaintiff's allegations that officers arrested plaintiff in order to subdue his speech.

The undisputed evidence shows that the officers detained plaintiff not based on the content of his speech, but because of his conduct which caused them to believe that he was a danger to others. Officer Loth's police report indicates that plaintiff's past history of depression, his ability to obtain a firearm, and statements made by his coworker to the effect that he felt threatened formed the basis for the detention. Similarly, officers arrested and charged plaintiff for possession of a firearm in violation

7

of the California Penal Code, and not for plaintiff's speech or expression. Accordingly, the Court finds that plaintiff's detention, arrest, and charges did not violate his First Amendment rights and GRANTS defendants motion for summary judgment as to the third cause of action. *See Virginia v. Hicks*, 539 U.S. 113, 123 (2003) (holding that there was no First Amendment violation when defendant was arrested for his nonexpressive conduct and not his speech).

### IV.   Violation of right to bear arms

Plaintiff's fourth cause of action alleges that the search and seizure at issue was unlawful and therefore violated his Second Amendment right to bear arms. As determined above, the search and seizure of the firearms from plaintiff's residence was properly conducted pursuant to California Welfare and Institutions Code Section 8102. Accordingly, the Court GRANTS defendants' motion for summary judgment as to the fourth cause of action.

### V.   Punitive Damages

Because the Court has found that none of plaintiff's causes of action can stand as a matter of law, no damages, punitive or otherwise are available to him for these claims.

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion for summary judgment [Docket No. 34].

**IT IS SO ORDERED.**

Dated: March 18, 2008

SUSAN ILLSTON
United States District Judge